UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL PUBLIC RADIO, INC. and GRAHAM SMITH,<br><br>                              Plaintiffs,<br><br>v.<br><br>U.S. CENTRAL COMMAND and U.S. DEPARTMENT OF DEFENSE,<br><br>                              Defendants. | Case No. 21-cv-1079-MMA (AHG)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DIMISS**<br><br>[Doc. No. 6] |

On June 9, 2021, National Public Radio, Inc. ("NPR") and Graham Smith (individually "Mr. Smith," and collectively with NPR, "Plaintiffs") filed a Complaint against U.S. Central Command ("CENTCOM") and U.S. Department of Defense (individually "DoD," and collectively with CENTCOM, "Defendants") pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").  Doc. No. 1 ("Compl."). Defendants now move to dismiss the Complaint for lack of subject matter jurisdiction pursuant to the first-to-file rule.  Doc. No. 6.  Plaintiffs filed an opposition, to which Defendants replied.  Doc. Nos. 7, 8.  The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule

7.1.d.1.  *See* Doc. No. 9.  For the reasons stated herein, the Court **DENIES** Defendants' motion.

## I. BACKGROUND

On August 14, 2019, Mr. Smith, a Senior Producer at NPR,[1] filed a FOIA request to the FOIA coordinator at Camp Pendleton's I Marine Expeditionary Force.  Compl. ¶ 1.  Mr. Smith's request was part of an investigation into Operation Vigilant Resolve, or the First Battle of Fallujah.  *Id*.  Mr. Smith requested "documents (which include electronic records) regarding to a [sic] suspected friendly fire incident that took place in Fallujah, Iraq on 12 April 2004."  *Id*.  Mr. Smith specifically requested:

- Records, photographs, notes, and reports from initial field investigation, battlefield observations, subsequent JAGMAN investigation and lessons learned; and
- Records relating to suspected friendly fire findings, relating to the organic 2/1 weapons and artillery 5th team and attached artillery components from 1st Battalion, 11th Marines; and
- Records, dates of family notification, and any other potentially relevant documents.

Doc. No. 1-2 ("Compl. Exh. A") at 2.[2]  CENTCOM, a component of the DoD, acknowledged the request, supplied a case number, and responded to the fee waiver request on November 21, 2019.  Doc. No. 1-3 ("Compl. Exh. B").  Plaintiffs allege that CENTCOM has not responded or produced any records since.  Compl. ¶ 1.  On June 9, 2021, Plaintiffs filed a complaint against Defendants alleging a violation of 5 U.S.C § 552 for failure to respond to the request.  Compl. ¶ 1.

## II. DISCUSSION

Defendants now move to dismiss the Complaint for lack of subject matter

---

[1] According to Plaintiffs, NPR "is a non-profit multimedia organization and the leading provider of non-commercial news, information, and entertainment programming to the American public."  Compl. ¶ 5.
[2] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

jurisdiction pursuant to the first-to-file rule.  Doc. No. 6 at 1.  Defendants inform the Court of another FOIA case pending before the United States District Court for the Northern District of California, case number 20-cv-2587-YGR ("Northern District Action").[3]  *Id.* at 1–2.  The Northern District Action was filed on April 15, 2020, by NPR and Eric Westervelt ("Mr. Westervelt"), an NPR News Correspondent, against U.S. Marines, a component of the DoD; U.S. Navy, a component of the DoD; and the DoD.  *Id.*  The Northern District Action also concerns a FOIA request for records relating to Operation Vigilant Resolve in Iraq.  *See id.* at 1.  Mr. Westervelt specifically requested "documents (which include electronic records) from February 2004 until October 2004."  Doc. No. 7-1 ("Opp. Exh. A").  The request specified the following documents:

- Records from administrative investigations (commonly referred to as "JAGMAN" investigations) and other investigation, relating to U.S. Marines killed or injured during Operation Vigilant Resolve in or around Fallujah, Iraq in the winter or spring of 2004; and
- Records from an investigation ordered by Lieutenant General Greg Olsen into the death of a Marine and the injury of another Marine from 2nd Battalion, 1st Marines that may relate to actions taken by or ordered by Marines with the 1st Battalion, 11th Marines, including then Captain Duncan Hunter.

*Id.*  The request in the Northern District Action was made to the U.S. Marines FOIA Program Office.  Doc. No. 6-1 ("MTD Exh. A").

---

[3] Courts may take judicial notice of their own records, and may also take judicial notice of other court proceedings if they "directly relate to matters before the court."  *Hayes v. Woodford*, 444 F. Supp. 2d 1127, 1136–37 (S.D. Cal. 2006).  Because this case is a matter of judicial record, and its authenticity is not in question, the Court can and does take judicial notice of the existence and docket of *Nat'l Pub. Radio, Inc. v. U.S. Marines*, No. 4:20-cv-02587-YGR (N.D. Cal. filed April 15, 2020).  *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal) ("[T]he court may take judicial notice of the existence of unrelated court documents, although it will not take judicial notice of such documents for the truth of the matter asserted therein.").

In the Northern District Action, Mr. Westervelt received multiple responses to his request from the requested component, and he later received a notification that no documents could be found. *See* Doc. No. 7 at 10. Defendants note that since the Northern District Action was filed, "Plaintiffs' counsel has coordinated with the U.S. Attorney's Office for the Northern District of California in San Francisco regarding the release of the requested documents." Doc. No. 6 at 2. In that case, many records—approximately fifty-four pages worth of records—have since been released to the plaintiffs, and the case is presently stayed pursuant to a joint stipulation. Doc. No. 7-3 ("Opp. Exh. C"). Parties in the Northern District Action "made special arrangements with CENTCOM to prepare the JAGMAN pursuant to the FOIA so that the Defendants . . . may provide it to Plaintiffs." *Id.*

Accordingly, Defendants argue that the present action should be dismissed or stayed given the similarity of the parties and issues to the Northern District Action. Doc. No. 6 at 1.

### A. First-to-File Rule

The first-to-file rule is a generally recognized, judicially created "doctrine of federal comity." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982). The rule provides the district court with the discretion "to stay proceedings if a similar case with substantially similar issues and parties was previously filed in another district court." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015). The purpose of the first-to-file rule is to "maximize 'economy, consistency, and comity.'" *Id.* (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999)). The rule is not to be mechanically applied, but "rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter*, 678 F.2d at 95. When determining whether the first-to-file rule applies, the court must consider three factors: (1) the chronology of the lawsuits, (2) the similarity of the parties, and (3) the similarity of the issues. *Id.*

The Court finds the Complaint satisfies only one of the factors for the rule, and therefore finds that the rule is not applicable here.

**B.     Analysis**

*1.     Chronology of Actions*

The first factor is chronology of the actions.  Defendants argue the Northern District Action precedes the present action.  Doc. No. 6 at 5.  Plaintiffs do not address this first factor.  *See* Doc. No. 7 at 4.  That said, there is no dispute that the Northern District Action was filed before the present action.  The complaint in the Northern District Action was filed on April 15, 2020.  *See* Complaint at 1, *Nat'l Pub. Radio, Inc.*, No. 4:20-cv-02587-YGR.  In the present case, Plaintiffs filed the Complaint on June 9, 2021.  *See* Compl.  Accordingly, the first factor weighs in favor of granting the motion.

*2.     Similarity of Parties*

The second factor is similarity of the parties.  Defendants assert NPR is named as a plaintiff in both cases, DoD is named as a defendant in both cases, and adding or omitting a party does not change the analysis of the first-to-file rule in order to avoid "gamesmanship" incentives.  Doc. No. 6 at 5.  Plaintiffs argue in opposition that all relevant parties are dissimilar, namely that the real parties in interest are different and the DoD's presence in both cases is merely nominal.  *See* Doc. No. 7 at 5–6.  Furthermore, Plaintiffs argue that the agencies defending each case are different DoD components.  *See id.* at 6–7.

The identity of the parties need not be exact.  *Kohn*, 787 F.3d at 1240.  The first-to-file rule only requires "substantial similarity of parties."  *Id.*  The Ninth Circuit has held that omission of one party from a second lawsuit does not defeat the first-to-file rule applicability.  *See id.*; *see also Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 624 & n.3, 629 (9th Cir. 1991) (finding that the first-to-file rule applied even though the first-filed case involved a defendant not named in the second case); *Pac. Coast Breaker, Inc. v. Conn. Electric, Inc.*, 2011 WL 2073796, at *3 (E.D. Cal. May 24, 2011) ("The [first-to-file] rule is satisfied if some [of] the parties in one matter are also in the other matter,

regardless of whether there are additional, unmatched parties on one or both matters." (quoting *PETA, Inc. v. Beyond the Frame, Inc.*, 2011 WL 686158, at *2 (C.D. Cal. 2010)). The main consideration for the first-to-file rule is the requirement of parallel suits, not identical suits. *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988). "A 'suit is "parallel" when substantially the same parties are contemporaneously litigating substantially the same issues in another forum.'" *Id.* (quoting *Calvert Fire Ins. Co. v. American Mutual Reinsurance Co.*, 600 F.2d 1228, 1229 n.1 (7th Cir. 1979)).

Here, the parties in both cases are not substantially similar. In the Northern District Action, NPR and Mr. Westervelt bring suit against U.S. Marine Corps, U.S. Navy, and DoD. In the present case, NPR and Mr. Smith bring suit against CENTCOM and DoD. NPR is a plaintiff in the present action and a plaintiff in the Northern District Action. DoD is also a defendant in both actions. While exact identity is not required, the difference of including CENTCOM, rather than U.S. Marine Corps, is important because CENTCOM is the responding DoD component for the present FOIA request and U.S. Marine Corps is the responding DoD component in the Northern District Action's FOIA request.

The FOIA's language makes clear that the distinction between the receiving components is important. It states that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C § 552(a)(3)(A). Thus, the statute specifically mentions that the agency receiving the request is responsible for responding to the request. *Id.* Moreover, contained within the Code of Federal Regulations, the DoD FOIA Program sets forth "the rules the public follows in requesting information from the [DoD] in accordance with the FOIA, as amended 5 U.S.C 552, and how those requests will be processed by the DoD." 32 C.F.R. § 286.1 (2020). The DoD's FOIA program, as noted by Plaintiffs, has a "decentralized system for responding to FOIA requests, with

each DoD Component designating at least one FOIA Requester Service Center (RSC) to process records from that component." *Id.* § 286.3(a).  Furthermore, the Code of Federal Regulations includes an internet link to the FOIA webpage that specifically lists the different RSCs. *See id.*

In the Northern District Action, the U.S. Marine Corps FOIA program is responsible for the FOIA request.  In the present case, CENTCOM, a different DoD component, is responsible for the FOIA request.  Because the DoD designates separate components to respond to their respective FOIA requests, each DoD component in these two cases would thus be responsible for their respective FOIA requests. *See* 32 C.F.R. § 286.7(a).  Therefore, the parties are not substantially similar, and the second factor weighs against granting the motion.

    3.    *Similarity of Issues*

The third factor is similarity of the issues.  Defendants argue the issues in both cases are similar because they both involve "FOIA actions brought by NPR to force DoD to release records regarding Operation Vigilant Resolve." Doc. No. 6 at 6.  Defendants further argue that both cases concern whether records are being improperly withheld and the FOIA requests themselves are substantially similar. *See id.*  Plaintiffs in opposition argue that the requests "contain different language and were sent to different agencies who would necessarily have different information," the cases present different legal issues, and any remedy afforded in the Northern District case would not be sufficient to redress Plaintiffs.  Doc. No. 7 at 9–11.

The issues in both cases "need not be identical, only substantially similar." *Kohn*, 787 F.3d at 1240.  "To determine whether two suits involve substantially similar issues, [courts] look at whether there is 'substantial overlap' between the two suits." *Id.* at 1241; *see also Pacesetter*, 678 F2d at 95 (finding that the first-to-file rule applied because "[t]he central questions in each [were] the validity and enforceability of three specific patents" and "[t]he same three parties [were] involved in both suits").

Here, the issues in the two cases are not substantially similar because they admittedly involve two different FOIA requests. And importantly, the requests were submitted to different components of the DoD. *See supra* Section II.B.2.

Defendants note that in the Northern District Action, "DoD had 'made special arrangements with CENTCOM to prepare the JAGMAN pursuant to the FOIA so that the Defendants may provide it to Plaintiffs.'" Doc. No. 8 at 2 (quoting Opp. Exh. C at 3). Defendants argue this fact supports the assertion that the issues in the two cases are substantially similar. *See id.* The Court disagrees. Election to involve CENTCOM in the Northern District Action for the purpose of furnishing a specific document was at the responding DoD component's discretion in that FOIA request case. Though there could be overlap in production between the two FOIA requests, the extent to which the requests overlap is unknown. Moreover, the DoD FOIA handbook describes the types of records maintained by each component, *see* 32 C.F.R. § 286.1, so each requested component may maintain different records. Furthermore, the search for information, determination of records to be released, and redaction of the records are left to the responding component of the DoD. *See* 32 C.F.R. § 286.7(a). As such, the central issue in these cases concern differing responses to separate FOIA requests that involve different language made to different DoD components.

Finally, as noted above, "[t]he most basic aspect of the first-to-file rule is that it is discretionary." *Alltrade*, 946 F.2d at 628. When a court finds the rule to be applicable, the court has the power to transfer, stay, or dismiss the case. *See id.* at 623. However, the court has discretion to disregard the rule in the interests of equity. *See id.* at 622.

Thus, even if the parties and issues were "substantially similar," the Court has the discretion to apply the first-to-file rule, at which point the Court would disregard the rule in the interests of equity. The FOIA requests themselves are different in the two cases and deferring completely to the Northern District Action may not provide Plaintiffs with the opportunity to have their FOIA request fully considered in a timely manner—doing so could result in the present request being overshadowed by the other. Moreover, it

would be inequitable to dismiss or stay this action merely because a separate FOIA request was previously made; otherwise, Defendants would essentially be exempted from their duty to respond to subsequent, albeit similar requests.

Consequently, Plaintiffs may not be fully remedied if the case is dismissed or stayed due to the existence of a *different* FOIA request made to a *different* FOIA component using *different* requesting language.  These separate cases boil down to the fulfillment of two different FOIA requests made to different DoD components.  This is not a situation where "the same parties are contemporaneously litigating substantially the same issues in another forum." *Interstate Material Corp.*, 847 F.2d at 1288.  Therefore, the Court finds the first-to-file rule does not apply.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss for lack of subject matter jurisdiction.  The Court **DIRECTS** Defendants to file a response within the time specified by Federal Rule of Civil Procedure 12(a)(4)(A).

**IT IS SO ORDERED**.

Dated:  November 10, 2021

*[signature: Michael M. Anello]*

HON. MICHAEL M. ANELLO
United States District Judge