# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL PUBLIC RADIO, INC. and GRAHAM SMITH,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. CENTRAL COMMAND and U.S. DEPARTMENT OF DEFENSE,<br><br>Defendants. | Case No. 21-cv-1079-MMA (AHG)<br><br>**ORDER AFFIRMING TENTATIVE RULINGS RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 23, 32] |

Plaintiffs National Public Radio, Inc. ("NPR") and Graham Smith (individually "Mr. Smith," and collectively with NPR, "Plaintiffs") bring this action for declaratory and injunctive relief pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against Defendants U.S. Central Command ("CENTCOM") and the U.S. Department of Defense (individually "DoD," and collectively with CENTCOM, "Defendants"). Doc. No. 1 ("Compl."). Presently before the Court are the parties' cross-motions for summary judgment, wherein the parties spar over the adequacy and timeliness of CENTCOM's FOIA search. Doc. Nos. 23, 32. On December 12, 2022, the parties appeared before the Court for a hearing on their cross-motions for summary

judgment. Doc. No. 39. In anticipation of the hearing, the Court issued tentative rulings on the pending motions. *See* Doc. No. 38. Upon due consideration of the motions, the responses and replies thereto, the applicable law, the parties' oral arguments, the entire record herein, and for the reasons set forth below, the Court **AFFIRMS** its tentative rulings. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Plaintiffs' cross-motion for summary judgment.

## I. Background[1]

On August 14, 2019, Mr. Smith, a Senior Producer at NPR,[2] filed a FOIA request to the FOIA coordinator at Camp Pendleton's I Marine Expeditionary Force. Compl. ¶ 1; *see also* Doc. Nos. 23-3 ¶ 1, 32-24 ¶ 1. Mr. Smith's request was part of an investigation into Operation Vigilant Resolve, or the First Battle of Fallujah. Compl. ¶ 1; Doc. No. 32-24 ¶ 5. Mr. Smith requested "documents (which include electronic records) regarding to a [sic] suspected friendly fire incident that took place in Fallujah, Iraq on 12 April 2004." Doc. Nos. 1-2, 23-3 ¶ 1, 32-24 ¶ 1. Mr. Smith specifically requested:

- Records, photographs, notes, and reports from initial field investigation, battlefield observations, subsequent JAGMAN investigation and lessons learned; and

- Records relating to suspected friendly fire findings, relating to the organic 2/1 weapons and artillery 5th team and attached artillery components from 1st Battalion, 11th Marines; and

- Records, dates of family notification, and any other potentially relevant documents.

---

[1] This section includes background information derived from the Complaint and docket that may not be material to the present motions but nevertheless included for context. Particular material facts derived from the parties' supporting declarations and exhibits that are not recited in this section will be discussed *infra* where appropriate.

[2] According to Plaintiffs, NPR "is a non-profit multimedia organization and the leading provider of non-commercial news, information, and entertainment programming to the American public." Compl. ¶ 5.

1 | Doc. Nos. 1-2 at 2,³ 23-3 ¶ 1, 32-24 ¶ 2.  On November 4, 2019, CENTCOM, a
2 | component of the DoD, received the FOIA request.  Doc. No. 1-3 at 2.  On November 21,
3 | 2019, CENTCOM acknowledged the request, supplied a case number, and responded to
4 | the fee waiver request.  Doc. Nos. 1-3, 32-24 ¶ 3.

     On June 9, 2021, Plaintiffs filed the instant suit against Defendants alleging a violation of 5 U.S.C § 552 for failure to respond to their FOIA request.  Compl. ¶ 1.

     On August 2, 2021, Defendants filed a motion to dismiss the suit for lack of subject matter jurisdiction pursuant to the first-to-file rule.  Doc. No. 6.  In their motion to dismiss, Defendants informed the Court of another FOIA case pending before the United States District Court for the Northern District of California, case number 20-cv-2587-YGR ("Northern District Action").  *Id.* at 1–2.  The Northern District Action was filed on April 15, 2020, by NPR and Eric Westervelt, an NPR News Correspondent, against U.S. Marines, a component of the DoD; U.S. Navy, a component of the DoD; and the DoD. *Id.*  The Northern District Action also concerned a FOIA request for records relating to Operation Vigilant Resolve in Iraq.  *See id.* at 1.  Notably, CENTCOM was not a party to the Northern District Action.  On November 10, 2021, the Court denied Defendants' motion to dismiss, finding that the first-to-file rule did not apply and noting that the two separate cases "boil[ed] down to the fulfillment of two different FOIA requests made to different DoD components."  Doc. No. 12 at 9.

     Following the denial of Defendants' motion to dismiss, CENTCOM sent Mr. Smith a letter on November 18, 2021, indicating that it "conducted a thorough good faith search and located 85 pages."  Doc. No. 32-5 at 2.  As a result, CENTCOM partially released an 85-page Manual of the Judge Advocate General ("JAGMAN Report") in response to Mr. Smith's FOIA request.  *See generally* Doc. No. 32-5.

---

³ All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

On April 6, 2022, Defendants filed their motion for summary judgment. Doc. No. 23. Thereafter, as will be discussed below, it became clear that Defendants were conducting an additional search. *See* Doc. No. 23 at 17. Accordingly, Plaintiffs requested that the briefing schedule be vacated to allow Defendants to complete their additional search. Doc. No. 26. Magistrate Judge Allison H. Goddard granted Plaintiffs' request and extended the briefing schedule by approximately four months. *See* Doc. Nos. 21, 27, 31. On September 1, 2022, Plaintiffs filed their opposition and cross-motion for summary judgment. Doc. No. 32. On October 3, 2022, Defendants filed a reply in support of their motion for summary judgment and an opposition to Plaintiff's cross-motion for summary judgment. Doc. No. 33. On October 17, 2022, Plaintiffs filed their reply in support of their cross-motion for summary judgment. Doc. No. 34.

As stated above, the Court heard oral argument on the motions on December 12, 2022. Doc. No. 39. Accordingly, the motions are now ripe for decision.

## II. LEGAL STANDARDS

### A. Summary Judgment

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The court must view the evidence in the light most favorable to the non-moving party. *Fresno Motors, LCC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A genuine factual issue exists if sufficient evidence favors the non-movant such that "a reasonable [judge or] jury could return a verdict for the nonmoving party." *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (alteration in original) (quoting *Anderson*, 477 U.S. at 248). The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of

fact. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting *Anderson*, 477 U.S. at 255).

To defeat summary judgment once the moving party has met its burden, the nonmoving party may not simply rely on the pleadings, but must point to specific facts, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, showing that a genuine issue of material fact exists. *Devereaux*, 263 F.3d at 1076. More than a "scintilla of evidence" must exist to support the non-moving party's claims. *Pomona*, 750 F.3d at 1049 (quoting *Anderson*, 477 U.S. at 252). A showing that "there is some 'metaphysical doubt' as to the material facts as issue" will not suffice. *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Pomona*, 750 F.3d at 1049–50 (quoting *Matsushita*, 475 U.S. at 587).

Where, as here, the parties have filed cross-motions for summary judgment, "each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quotation omitted). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

**B.    FOIA**

"FOIA 'was enacted to facilitate public access to Government documents.'" *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). Its "'core purpose' is to inform citizens about 'what their government is up to.'" *Yonemoto v. U.S. Dep't of Veterans Affairs*, 686 F.3d 681, 687 (9th Cir. 2012) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773, 775 (1989)).

FOIA cases are typically decided on motions for summary judgment as the facts are rarely in dispute. *See Minier v. Cent. Intelligence Agency*, 88 F.3d 796, 800 (9th Cir.

1996). The court reviews *de novo* an agency's action in response to a FOIA request, and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). "[I]f there are genuine issues of material fact in a FOIA case, the district court should proceed to a bench trial or adversary hearing. Resolution of factual disputes should be through the usual crucible of bench trial or hearing, with evidence subject to scrutiny and witnesses subject to cross-examination." *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 990 (9th Cir. 2016).

### III. Discussion

Defendants assert that they are entitled to summary judgment on Plaintiffs' FOIA claim because they have "properly interpreted Plaintiffs' FOIA request" and "released a comprehensive investigative report consolidating all of the topically associated documents found within CENTCOM's possession regarding the incident in question." Doc. No. 23 at 8, 21.

Plaintiffs oppose Defendants' motion and argue that they are entitled to summary judgment because CENTCOM's search of "just one records system" was not reasonable and because CENTCOM failed to timely respond to Mr. Smith's FOIA request. Doc. No. 32 at 2, 7. Plaintiffs now ask the Court to order Defendants to "conduct additional searches for responsive records." *Id.* at 24. Plaintiffs also request declaratory relief and attorney's fees. *Id.*

The only questions before this Court are: (1) whether Defendants have met their burden to demonstrate that they conducted a search reasonably calculated to uncover "all" relevant documents, *see Weisberg v. Department of Justice*, 705 F.2d 1344, 1357 (D.C. Cir. 1983); and (2) whether Plaintiffs are entitled to a declaratory judgment regarding the timeliness of Defendants' search.

**A.   Standard for a Reasonable Search**

"FOIA requires an agency responding to a request to demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Lahr*, 569 F.3d at 986 (quoting *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)); 5 U.S.C.

§ 552(a)(3)(C); *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 770 (9th Cir. 2015) ("In response to a FOIA request, government agencies must conduct a reasonable search to find any documents responsive to the request."). "[U]nder FOIA, agencies bear the burden of demonstrating the adequacy of their search beyond a material doubt." *Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 780 (9th Cir. 2022).

To determine the adequacy of the search, courts may rely on "reasonably detailed, nonconclusory affidavits submitted" by the agency. *Zemansky*, 767 F.2d at 571 (quoting *Weisberg*, 745 F.2d at 1485). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). To satisfy the law, the agency's affidavit must describe the method of searching, such as the search terms used or the type of search performed, and show that "all files *likely* to contain responsive materials (if such records exist)" were searched. *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (emphasis added). "However, if a review of the record raises substantial doubt, particularly in view of 'well defined requests and positive indications of overlooked materials, summary judgment is inappropriate.'" *Id.*

The touchstone for determining the adequacy of the agency's search methodology is thus the "reasonableness test," applied in light of the FOIA's policy favoring disclosure. *Valencia-Lucena*, 180 F.3d at 325–26; accord *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998). "When a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return." *Id.* at 28. However, "[t]he court evaluates the reasonableness of an agency's search based on what the agency knew at its conclusion rather than what the agency speculated at its inception." *Id.* In other words, the agency must "revise its assessment of what is 'reasonable' in a particular case to account for leads that emerge during its inquiry." *Id.* If disclosed records indicate that a search of another record system or other facilities

would likely uncover additional documents, then the agency must expand its search, barring an "undue burden." *Valencia-Lucena*, 180 F.3d at 326–27.

## B. Defendants' Search for Records

In support of its motion for summary judgment, CENTCOM submitted two declarations from Edgardo M. Guzman ("Guzman"), the Command Records Manager at CENTCOM's MacDill Air Force Base in Tampa, Florida. Doc. No. 23-2 ("Guzman Decl. 1" and "Guzman Decl. 2"). It is undisputed that CENTCOM completed three searches in response to Plaintiffs' FOIA request. *See* Doc. Nos. 23 at 15–17, 32 at 14–17, 32-24 ¶¶ 38, 40. The Court details each search below.

### 1. First Search

According to Guzman, when the DoD referred this action to CENTCOM, it "had already been conducting searches because it had received the FOIA request on November 21, 2019 and was providing information in" the Northern District Action.[4] Guzman Decl. 1 ¶ 4. CENTCOM used the following search terms:

> Fallujah AND "Brad S. Shuder" AND ("AR 15-6 OR "Investigation" OR "JAGMAN investigation") and date created on: 4/10/2004 to 4/15/2004;
>
> Fallujah AND "Zurheide" AND ("AR 15-6 OR "Investigation" OR "JAGMAN investigation") and date created on: 4/10/2004 to 4/15/2004;
>
> Fallujah AND "Smith" AND ("AR 15-6 OR "Investigation" OR "JAGMAN investigation") and date created on: 4/10/2004 to 4/15/2004; [and]
>
> "Fallujah" AND "Costello" AND ("AR 15-6 OR "Investigation" OR "JAGMAN investigation") and date created on: 4/10/2004 to 4/15/2004.

---

[4] The Court notes that in assessing the adequacy of Defendants' search in this case, it does not take into consideration CENTCOM's searches it may have conducted in response to the FOIA request in the Northern District Action. As stated above, CENTCOM was not a party to that case and this case involves an entirely different FOIA request. Doc. No. 12 at 9.

*Id.* Guzman "coordinated the search of all electronic files" on CENTCOM's Secure Internet Protocol Route Micro Content Manager ("SIPR CM"). *Id.* ¶ 6; *see also* Guzman Decl. 2 ¶ 4. Guzman limited CENTCOM's search to the SIPR CM because it was "the location responsive records from Iraq during the time period requested [by Mr. Smith's FOIA request] would most likely be, if responsive records existed." Guzman Decl. 1 ¶ 6; *see also* Guzman Decl. 2 ¶ 4. In addition, SIPR CM is CENTCOM's "electronic records management application/system containing over ninety (90) millions war records, including those retrieved from subordinate units service in Iraq." Guzman Decl. 1 ¶ 6; *see also* Guzman Decl. 2 ¶ 4. There were "no other databases which would likely contain responsive records." Guzman Decl. 1 ¶ 6; *see also* Guzman Decl. 2 ¶ 4.

As a result of CENTCOM's first search efforts, only the JAGMAN Report "was found to be responsive." Guzman Decl. 1 ¶ 4. CENTCOM produced a redacted version of the JAGMAN Report to Plaintiffs on November 18, 2021. *See generally* Doc. No. 32-5. Plaintiffs do not object to the redactions or exemptions applied by CENTCOM in its production of the JAGMAN Report. *See* Doc. No. 32-25 ¶ 4.

   2.   Second Search

Following CENTCOM's production of the JAGMAN Report, the parties attended an Early Neutral Evaluation ("ENE") conference before Judge Goddard on December 15, 2021. Doc. No. 18. The case did not settle, however, following the ENE, CENTCOM conducted a second search with the following broader search terms:

> Fallujah AND "Shuder" AND ("AR 15-6" OR "Investigation" OR "JAGMAN" OR "lessons learned" OR "friendly fire" OR "family" OR "Next-of-Kin") and date created on: 4/1/2004 to 4/1/2009;
>
> Fallujah AND "Zurheide" AND ("AR 15-6" OR "Investigation" OR "JAGMAN" OR "lessons learned" OR "friendly fire" OR "family" OR "Next-of-Kin") and date created on: 4/1/2004 to 4/1/2009;

Fallujah AND "Smith" AND ("AR 15-6 OR" OR "Investigation" OR "JAGMAN" OR "lessons learned" OR "friendly fire" OR "family" OR "Next-of-Kin") and date created on: 4/1/2004 to 4/1/2009;

Fallujah AND "Costello" AND ("AR 15-6" OR "Investigation" OR "JAGMAN" OR "lessons learned" OR "friendly fire" OR "family" OR "Next-of-Kin") and date created on: 4/1/2004 to 4/1/2009; [and]

"Echo 2/1" AND "Fallujah" AND ("AR 15-6" OR "Investigation" OR "JAGMAN" OR "lessons learned" OR "friendly fire" OR "family" OR "Next-of-Kin") and date created on: 4/1/2004 to 4/1/2009.

Guzman Decl. 1 ¶ 6. Guzman supervised this search, which was also conducted on the SIPR CM. *Id.* The search resulted in 2,283 potentially responsive records, which were then "personally and manually reviewed." *Id.* ¶ 7. Again, only the JAGMAN Report was identified as responsive to Mr. Smith's FOIA request. *Id.*

After receiving the JAGMAN Report and reviewing Guzman's first declaration, which outlined CENTCOM's first and second searches, Plaintiffs requested that CENTCOM conduct physical and electronic searches in additional locations on February 1, 2022. *See* Doc. No. 32-1, Fundakowski Decl. in Support of Plaintiffs' Cross-Motion for Summary Judgment ("Fundakowski Decl."). These locations included the following: (1) CENTCOM's Non-classified Internet Protocol Router Network ("NIPR"); (2) CENTCOM's records at its MacDill Air Force Base headquarters in Tampa, Florida in its "sub-units J-1 (Manpower and Personnel), J-3 (Operations), J-5 (Plans and Policy), J-6 (Systems), J-8 (Resources and Analysis)"; (3) CENTCOM's Office of the Inspector General; and (4) U.S. Marines Corps Forces, Central Command ("MARCENT"). Fundakowski Decl. ¶ 17; *see also* Doc. No. 32-7.

CENTCOM did not search any additional locations. Fundakowski Decl. ¶ 19. Instead, CENTCOM provided Plaintiffs with Guzman's second declaration, which elaborated on why CENTCOM limited its search to the SIPR CM. *See generally* Guzman Decl. 2.

### 3. Third Search

In their motion for summary judgment, Defendants represented that they were in the midst of conducting a third search following a second ENE held by Judge Goddard. *See* Doc. Nos. 20, 23 at 17. In an opposed joint motion to vacate Judge Goddard's briefing schedule, Plaintiffs represented that they were unaware of Defendants' third search, and therefore, requested an extension of the due date for their opposition and cross-motion for summary judgment so that they would have the benefit of knowing the outcome of Defendants' third search. *See* Doc. No. 26-1 at 3. Judge Goddard granted the extension. Doc. No. 27. In their cross-motion for summary judgment, Plaintiffs represent that Defendants' "third search did not address [Plaintiffs'] fundamental dispute with CENTCOM over search locations." Doc. No. 32 at 17.

### C. The Adequacy of Defendants' Search

Defendants argue that they "properly interpreted Plaintiffs' FOIA request" and conducted an adequate search. Doc. No. 23 at 18–21. Conversely, while Plaintiffs do not challenge the adequacy of CENTCOM's search terms used, they argue that CENTCOM's failure to search beyond one database—the SIPR CM—renders its search inadequate. Doc. No. 32 at 18–22.

A "demand that an agency search a specific record system in a FOIA request does not automatically obligate an agency to do so." *Cato Inst. v. Fed. Bureau of Investigation*, No. 20-cv-3338-JEB, 2022 WL 16635243, at *4 (D.D.C. Nov. 2, 2022). Moreover, an agency "generally need not 'search every record system'" in response to a FOIA request, but as stated above, it must nevertheless continually "revise its assessment of what [constitutes a] 'reasonable' [search] in a particular case to account for leads that emerge during its inquiry." *Campbell*, 164 F.3d at 28 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). Still, "a request for an agency to search a particular record system—without more—does not invariably constitute a 'lead' that an agency must pursue." *Mobley v. Cent. Intel. Agency*, 806 F.3d 568, 582 (D.C. Cir. 2015). Rather, "a search is generally adequate where the agency has sufficiently explained its

search process and why the specified record systems are not reasonably likely to contain responsive records." *Id.*

As detailed by the first Guzman declaration, CENTCOM began its search with the SIPR CM because it was "the location responsive records from Iraq during the time period requested would most likely be, if responsive records existed." Guzman Decl. 1 ¶ 6. Guzman also represented that there were "no other databases which would likely contain responsive records." *Id.* Upon review of Guzman's first declaration, Plaintiffs notified Defendants by email of potential leads that pointed to records outside of SIPR CM. *See* Fundakowski Decl. ¶ 17; *see also* Doc. No. 32-7.

For example, Plaintiffs argue that CENTCOM is required to search the records of Combined Joint Task Force-7 ("CJTF-7") because "the JAGMAN Report identified the existence of an independent investigation run by CJTF-7, which does not appear to be in the SIPR [CM]." Doc. No. 32 at 19–20. Further, Plaintiffs argue that CENTCOM must search MARCENT records because "CENTCOM Commander Lieutenant General [John P.] Abizaid's endorsement of the JAGMAN Report directs the commander of MARCENT" to brief injured service members and next-of-kin on the findings of the friendly fire investigation. *Id.* at 20. Plaintiffs also argue that CENTCOM's search was inadequate because it should have conducted physical searches at its base in Florida and a search of the NIPR. *Id.* at 21–22.

In support of these arguments and leads, Plaintiffs cite to the declaration of Thomas Wagoner, a retired lieutenant colonel with the U.S. Marine Corps, and to several military regulations which require various reports to be generated after certain incidents—such as when servicemembers are injured or killed—and which also detail how these reports are transmitted within CENTCOM and between other agencies. *Id.* at 18–22.

Although CENTCOM did not search any additional locations proposed by Plaintiffs, the Court finds that it met its burden to follow all leads and clearly explained its decisions about the scope of its search in Guzman's declarations. Guzman explained

that "[w]hen collections are reviewed from the Combined Joint Task Forces (CJTF), these records are transferred to [CENTCOM's] SIPR for processing to [its content manager]." Guzman Decl. 2 ¶ 4. Further, CENTCOM only collects "Joint Records from each [CJTF] Headquarters in [its] area of responsibility (AOR)" and defines joint records "as all records created or received by [CENTCOM], their subordinate unified commands, CJTFs, and all other subordinate functional components, or operational forces that are immediately responsive [to CENTCOM]." *Id.* ¶ 7. Guzman explained again that these records are maintained in the SIPR CM. *Id.* As to MARCENT, Guzman represented that MARCENT is not in CENTCOM's chain of command when it comes to "archiving the service's records" and does not maintain MARCENT records "unless they are joint records." Guzman Decl. 1 ¶ 8; Guzman Decl. 2 ¶ 5. As to why CENTCOM did not search physical locations, Guzman represented that "there is no need to do a physical and electronic search of records stored" at CENTCOM's base because "all Iraq war records were physically brought back to [CENTCOM] headquarters in 2010, and [CENTCOM] receives quarterly, or as required, collections from the CJTFs which are transferred to and processed into SIPR CM for preservation." Guzman Decl. 2 ¶ 10. And finally, as to the NIPR, while relying on the representations in Guzman's declarations at the hearing on December 12, 2022, Defendants' counsel emphasized that CENTCOM only has the ability to search the SIPR CM database. Doc. No. 39.

Based on these representations, the Court finds that Plaintiffs have "made a diligent search for those documents in the places in which they might be expected to be found." *Lahr*, 569 F.3d at 987. Although Plaintiffs argue about materials that may not have appeared in CENTCOM's searches of the SIPR CM, such as a report from an investigation by the CJTF-7[5] or personnel casualty reports, "the fact that responsive

---

[5] Relying on the declaration submitted by Ret. Lt. Wagoner, Plaintiffs assert that this supposed report from the CJTF-7 investigation should have been included in Defendants' FOIA production. *See* Doc. Nos. 32 at 13–14, 32-19 ¶¶ 34–38. However, Plaintiffs could not confirm at the hearing on December 12, 2022 whether this report was ever created or whether this investigation actually took place. Doc.

documents once existed does not mean that they remain in [CENTCOM's] custody today or that [CENTCOM] had a duty under FOIA to retain the records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004). Furthermore, the reasonableness of a search is determined, not by its results, but by the agency's search methodology and the reasonable efforts the agency adopted to find responsive records. *Valencia-Lucena*, 180 F.3d at 325–26. Here, CENTCOM's searches were, on their face, reasonable. The fact that they did not ultimately result in the identification of some of the documents Plaintiffs hoped to recover does not undermine the reasonableness of CENTCOM's searches. Moreover, there is no evidence of any wrongdoing or agency failure to comply with its recordkeeping rules in this case sufficient to rebut the "presumption of good faith" that this Court must grant CENTCOM in its search for responsive records. *SafeCard*, 926 F.2d at 1200.

Therefore, it appears that Defendants have met their burden on summary judgment to demonstrate "beyond material doubt" that its search was reasonably calculated to uncover all relevant documents. *Transgender L. Ctr.*, 46 F.4th at 780; *see also Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). Accordingly, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Plaintiffs' cross-motion for summary judgment as to their claim regarding the adequacy of Defendants' search.

**D.   Declaratory Judgment**

Plaintiffs also ask the Court to enter a declaratory judgment that Defendants "violated FOIA's requirement to timely respond to NPR's requests." Doc. No. 32 at 24. Defendants request that the Court "simply disregard Plaintiffs' demand" for declaratory

---

No. 39. "[M]ere speculation that as yet uncovered documents might exist, does not undermine the determination that [an] agency conducted an adequate search for the requested records." *Edelman v. United States Securities and Exchange Commission*, No. 15-cv-2750-BEN (BGS), 2017 WL 4286939, *5 (S.D. Cal. Sept. 17, 2017) (citations omitted).

judgment because "CENTCOM has more than reasonably complied with all FOIA obligations in this matter." Doc. No. 33 at 8.

Issuing a declaratory judgment is a discretionary function of the district court. *Olagues v. Russoniello*, 770 F.2d 791, 803 (9th Cir. 1985). An agency must provide a "determination" with respect to any FOIA request within twenty working days of receipt. 5 U.S.C. § 522(a)(6)(A)(i)–(ii). Under exceptional circumstances, this deadline may be extended to thirty working days. *Id.* "A 'determination' need not be the full production of documents, but at a minimum the agency must inform the requester what documents it will produce and the exceptions it will claim in withholding documents." *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1089 (N.D. Cal. 2015) (citing *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 184 (D.C. Cir. 2013)). The Congressional Record reveals "concern that agencies were dragging their feet in responding to FOIA requests;" accordingly, "an agency's failure to comply with the FOIA's time limits is, by itself, a violation of the FOIA." *Gilmore v. U.S. Dep't of Energy*, 33 F. Supp. 2d 1184, 1187 (N.D. Cal. 1998). "As a result, courts have found that entering declaratory judgment that the agency violated the FOIA is appropriate when the agency has a pattern and practice of violating these time limits [. . .] or when the agency has violated the time limits in responding to a particular set of requests, the agency's violations are consistent, and they may recur." *Our Children's Earth*, 85 F. Supp. 3d at 1089 (citations omitted).

This is not to say, however, that a declaratory judgment should always issue when the agency violates FOIA's time limits. On the contrary, the issuance of declaratory judgments must always be guided by "whether a judgment will clarify and settle the legal relations at issue and whether it will afford relief from the uncertainty and controversy giving rise to the proceedings." *See Nat'l Res. Def. Council v. EPA*, 966 F.2d 1292, 1299 (9th Cir. 1992).

Based on the record, it is clear that Defendants were untimely in responding to Plaintiffs' FOIA request. Although CENTCOM provided an initial letter to Mr. Smith

acknowledging his request within the statutory time frame, CENTCOM did not "inform [Mr. Smith] [of] what documents it w[ould] produce and the exceptions it w[ould] claim in withholding documents" until approximately two years later. *See Our Children's Earth*, 85 F. Supp. 3d at 1089; Doc. Nos. 1-2, 1-3. FOIA "requires that, within the relevant time period, an agency must determine whether to comply with a request—that is, whether a requester will receive all the documents the requester seeks. It is not enough that, within the relevant time period, the agency simply decide to later decide." *Citizens*, 711 F.3d at 186. Thus, the Court finds that Defendants violated FOIA in this respect.

Notwithstanding Defendants' delay in responding to Mr. Smith's FOIA request, the Court does not find declaratory judgment warranted. Plaintiffs argue that the "delay in this case exceeds CENTCOM's self-reported average of 450 days to process 'complex' FOIA requests, a statistic which demonstrates CENTCOM is a repeat violator of the FOIA statutory deadline." Doc. No. 32 at 24. However, this statement alone does not convince the Court that CENTCOM has a "pattern or practice" of violating FOIA's time limits. *Our Children's Earth*, 85 F. Supp. 3d at 1089. It is possible that CENTCOM's average processing time for FOIA requests contemplates the statute's "exceptional circumstances" safety valve, wherein a court may grant an agency "additional time to complete its review of the records" if it "is exercising due diligence in responding to the request." 5 U.S.C. § 552(a)(6)(C)(i). Moreover, there is no indication that any violations of the FOIA's time limits are likely to recur with respect to Plaintiffs' request at issue, as evidenced by CENTCOM's willingness to complete multiple searches in this case.

As a result, the Court finds that issuing a declaratory judgment against Defendants would neither "clarify and settle the legal relations at issue [nor] . . . afford relief from the uncertainty and controversy giving rise to the proceedings." *See Nat'l Res. Def. Council*, 966 F.2d at 1299. Therefore, Plaintiffs' cross-motion for summary judgment is **DENIED** as to their request for declaratory judgment.

## IV. Conclusion

In sum, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Plaintiffs' cross-motion for summary judgment. In addition, Plaintiffs' request for attorney's fees and costs is **DENIED**, as they are not the prevailing party. The Clerk of Court shall enter judgment accordingly and terminate this action.

**IT IS SO ORDERED**.

Dated: December 19, 2022

HON. MICHAEL M. ANELLO
United States District Judge