1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATIONAL PUBLIC RADIO, INC, et al., | Case No. 21-cv-1079-MMA-AHG |
| Plaintiffs, | **NOTICE AND ORDER PROVIDING TENTATIVE RULINGS RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** |
| v. | |
| U.S. CENTRAL COMMAND, et al., | |
| Defendants. | [Doc. No. 74] |

        On September 16, 2025, Plaintiffs National Public Radio, Inc. ("NPR"), and

Graham Smith (collectively "Plaintiffs") and Defendants U.S. Central Command

("CENTCOM") and U.S. Department of Defense ("DoD") (collectively "Defendants")

will appear for a hearing on Plaintiffs' motion for attorneys' fees and costs.  Doc. No. 74.

In anticipation of the hearing, the Court issues the following tentative ruling

**GRANTING IN PART** Plaintiffs' motion.

# I. LEGAL STANDARD

The Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552 (a)(4)(E)(i). A plaintiff "substantially prevails" if they obtain relief through "a judicial order, or an enforceable written agreement or consent decree; or . . . a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.* at § 552 (a)(4)(E)(ii)(I)–(II). Upon obtaining either, a plaintiff "is deemed 'eligible' for a fee award." *Poulsen v. Dep't of Def.*, 994 F.3d 1046, 1050 (9th Cir. 2021).

Eligibility alone, however, does not guarantee a plaintiff FOIA attorneys' fees. *Id.* Should they prove eligible, the court must next determine whether they are entitled to those fees. *Id.* In doing so, it considers at least four factors: "(1) the public benefit from disclosure[;] (2) any commercial benefit to the plaintiff resulting from disclosure[;] (3) the nature of the plaintiff's interest in the disclosed records[;] and (4) whether the government's withholding of the records had a reasonable basis in law." *Schoenberg v. F.B.I.*, 2 F.4th 1270, 1275 (9th Cir. 2021); *see also Davy v. C.I.A.*, 550 F.3d 1155, 1159 (D.C. Cir. 2008) ("*Davy II*"). These factors are non-exhaustive, and none are dispositive. *Schoenberg*, 2 F.4th at 1275–76; *Long v. I.R.S.*, 932 F.2d 1309, 1313 (9th Cir. 1991). The court may, in its discretion, consider any other factors it deems relevant. *Id.*

A "plaintiff who has proven both eligibility for and entitlement to fees must submit his fee bill to the court" so that it may scrutinize "(a) the number of hours expended[;] and (b) the hourly fee claimed" to determine whether those amounts are reasonable. *Long*, 932 F.2d at 1313–14. "If these two figures are reasonable, then there is a strong presumption that their product, the lodestar figure, represents a reasonable award." *Id.* at 1314 (quoting *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir.1987)) (internal quotation marks omitted). "The court may authorize an upward or downward adjustment from the lodestar figure if certain factors relating to the nature and difficulty of the case

1   overcome this strong presumption and indicate that such an adjustment is necessary." *Id.*

2   At this stage, however "the only room for discretion concerns the reasonableness of the

3   amount requested." *Id.*  The Court will address each step in turn.

## II. DISCUSSION

5        As a preliminary matter, though the Court understands that the parties have

6   "resolved all outstanding issues related to document searches," Doc. No. 70 at 2,[1] the

7   case remains open.  This motion is therefore procedurally distinct from one seeking

8   attorneys' fees after entry of judgment or dismissal post-settlement.  However, "[i]nterim

9   fees are available to FOIA litigants . . . " even when a case remains ongoing.  *Rosenfeld*

10  *v. United States*, 859 F.2d 717, 723–25 (9th Cir. 1988); *accord Hall v. C.I.A.*, 115 F.

11  Supp. 3d 24, 27 (D.D.C. 2015).  Thus, the Court tentatively finds the motion timely.

12       Turning to their motion, Plaintiffs argue that they are both eligible and entitled to

13  attorneys' fees in this action and submit a request for "$438,209.50 in attorneys' fees and

14  $6,566.75 in costs, for a total award of $444,776.25," which they argue is reasonable.

15  *See* Doc. No. 74 at 20.  Defendants assert that Plaintiffs should receive no attorneys' fees,

16  arguing that: (1) it is "questionable" whether Plaintiffs are eligible for attorneys' fees; (2)

17  that even if eligible, Plaintiffs are not entitled to attorneys' fees; and (3) that the amount

18  they request is unreasonable, "excessive[,] and punitive."  Doc. No. 75 at 14–27.

19  **A. Eligibility**

20       As set forth at the outset, a plaintiff is eligible for attorneys' fees if they

21  "substantially prevail[]" by obtaining relief through "a judicial order, or an enforceable

22  written agreement or consent decree; or . . . a voluntary or unilateral change in position

23  by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. at § 552

24  (a)(4)(E)(ii)(I)–(II); *Poulsen*, 994 F.3d at 1050.  A judicial order renders a plaintiff

25  eligible for attorneys' fees if it materially alters the parties' legal relationship and

26  provides at least some relief on the merits.  *See Davy v. C.I.A.,* 456 F.3d 162, 164–65

27

28

---

[1] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

1   (D.C. Cir. 2006) ("*Davy I*"); *Poulsen* 994 F.3d at 1052 (approving *Davy I*'s approach).

2   At the "eligibility" stage, the Court need not "look behind the judicial order and ascertain

3   how it came into existence." *See Poulsen*, 994 F.3d at 1051.  "Rather, it requires only the

4   entering of an order of the sort described in that subsection." *Id.*

5          First, the Court tentatively finds that its order denying Defendants' motion to

6   dismiss does not render Plaintiffs eligible for attorneys' fees because it made no

7   determinations that altered the parties' legal relationship and provided no relief on the

8   merits.  *See generally* Doc. No. 12.  Instead, the parties maintained the same legal

9   relationship after the order as they did before:  Plaintiffs continued to prosecute their case

10  against Defendants.  *See Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Dep't of*

11  *Energy*, 288 F.3d 452, 458 (D.C. Cir. 2002) ("*OCAW*"), *superseded by statute on other*

12  *grounds* ("Surviving a motion to dismiss does not alter the legal relationship between

13  parties.").

14         As to the Ninth Circuit's decision in this matter, however, the Court tentatively

15  finds that it renders Plaintiffs eligible for attorneys' fees.  The Ninth Circuit reversed the

16  Court's determination that Defendants had conducted an adequate search at summary

17  judgment—a ruling that determined whether Defendants violated their statutory duties

18  and afforded Plaintiffs some relief on the merits of their claim, even if incomplete relief.

19  *See The Sierra Club v. E.P.A.*, 75 F. Supp. 3d 1125, 1141 (N.D. Cal. 2014) ("*Sierra*

20  *Club*") ("[E]ven if Plaintiffs did not achieve all relief sought . . , it is sufficient that

21  Plaintiffs have 'succeed[ed] on any significant issue in litigation, achieving some of the

22  benefits the parties sought in bringing the suit.'") (internal quotation marks omitted).

23          Defendants note case law finding particular orders to conduct a search too

24  procedural to render a plaintiff the prevailing party.  Doc. No. 75 at 16.  The Court,

25  however, finds *Protect the Public's Trust v. I.R.S.* instructive.  No. 23-CV-340-RCL,

26  2024 WL 663427 *6 (D.D.C. Feb. 16, 2024) ("*PPT*") ("obtaining the necessary

27  antecedents to receiving responsive documents can constitute obtaining relief" even if no

28  responsive documents result."); *see, e.g.*, *PETA v. N.I.H.*, 130 F. Supp. 3d 156, 161–63

1 (D.D.C. 2015); *Leopold v. U.S. Secret Serv.*, No. 22-CV-1923-RDM-ZMF, 2025 WL

2 2177912, at \*2–3 (D.D.C. Aug. 1, 2025) (Report & Recommendation, not yet adopted).

3 Having undertaken a thorough review of the case law, other courts examining

4 "procedural" versus "substantive" orders while assessing eligibility lacked opportunity to

5 examine the relevant consideration at play here: a substantive determination that

6 Defendants had violated the law as to their substantive FOIA duties. *See, e.g.*, *OCAW*,

7 288 F.3d at 458–59; *Jud. Watch, Inc. v. F.B.I.*, 522 F.3d 364, 368–70 (D.C. Cir. 2008);

8 *Davy I*, 456 F.3d at 165–66; *Poulsen*, 994 F.3d at 1053 (quoting *Davy I*, 456 F.3d at 165–

9 66). Thus, the Court tentatively finds that Plaintiffs are eligible for attorneys' fees.[2]

10 **B. Entitlement**

11     The Court next considers at least four factors to determine Plaintiffs' entitlement to

12 attorneys' fees: "(1) the public benefit from disclosure[;] (2) any commercial benefit to

13 the plaintiff resulting from disclosure[;] (3) the nature of the plaintiff's interest in the

14 disclosed records[;] and (4) whether the government's withholding of the records had a

15 reasonable basis in law." *Schoenberg*, 2 F.4th at 1275; *see also Davy II*, 550 F.3d at 1159.

16 Because the four factors are neither exhaustive nor dispositive, the Court will also

17 consider the arguments concerning the Westervelt Northern District Action's attorneys'

18 fees.[3] *See Schoenberg*, 2 F.4th at 1275–76; *Long*, 932 F.2d at 1313.

19

20

---

21 [2] As the Court tentatively finds that Plaintiffs are eligible based on the Ninth Circuit's order, it tentatively finds it need not explore the parties' arguments as to changes in positions over: (1) certain

22 search terms; (2) expanded search terms; or (3) the JAGMAN report's production. *See* Doc. No. 74 at 10–13; Doc. No. 75 at 14–16. To the extent those arguments are relevant to the remaining inquiries, the

23 Court considers them within.

24 [3] The "Westervelt Northern District Action" as used herein refers to another FOIA case pending before the United States District Court for the Northern District of California, case number 20-cv-2587-YGR,

25 filed on April 15, 2020, by NPR and NPR News Correspondent Eric Westervelt, against U.S. Marines, a component of the DoD; U.S. Navy, a component of the DoD; and the DoD itself. Doc. No. 40 at 3.

26 That litigation also concerned a FOIA request for records relating to Operation Vigilant Resolve in Iraq. *Id.* CENTCOM was not a party. *Id.* "On November 10, 2021, the Court denied Defendants' motion to

27 dismiss, finding that the first-to-file rule did not apply and noting that the two separate cases 'boil[ed]

28 down to the fulfillment of two different FOIA requests made to different DoD components.'" *Id.* (quoting Doc. No. 12 at 9).

**1. Public Benefit**

"[I]n weighing the public benefit factor[,] the district court should take into account the degree of dissemination and the likely public impact that might result from disclosure." *Church of Scientology of California v. U.S.P.S.*, 700 F.2d 486, 493 (9th Cir. 1983) *abrogated by statute in part and on other grounds*. "[A]n award of attorney[s'] fees is not favored when it merely subsidizes a matter of private concern." *Id.* To be beneficial to the public "the request must have at least a modest probability of generating useful new information about a matter of public concern." *Morley v. C.I.A.*, 810 F.3d 841, 844 (D.C. Cir. 2016).

To start, the Court tentatively agrees with Plaintiffs' argument that the Court should examine this factor from the *ex-ante* viewpoint, analyzing what public benefit a possible future disclosure of the information sought may bring, rather than the public benefit derived from actual disclosure. *See* Doc. No. 74 at 13–14. The Ninth Circuit's verbiage of "likely public impact" that "might" result, and relevant D.C. Circuit caselaw,[4] support this approach. *See Church of Scientology*, 700 F.2d at 493 (citing *Blue v. B.O.P*, 570 F.2d 529, 533 (5th Cir. 1978)); *Morley v*, 810 F.3d at 844 (noting that precedent required the court to "assess 'the potential public value of the information sought' . . . not the public value of the information received.").

Here, the information sought concerned a matter of public interest—a friendly fire incident during the United States' military operation in Afghanistan—and was sought in a journalistic undertaking. Doc. No. 74-1 ("Smith Decl.") ¶¶ 1–5. That Plaintiffs sought to (and did) disseminate it to the public through their journalism further persuades the Court

---

[4] As Plaintiffs note, given the D.C. Circuit's predominance in deciding FOIA matters, other courts of appeals and district courts nationwide frequently turn to its decisions for guidance. *See Corbett v. U.S. Transp. Sec. Admin.*, No. CV 22-6920-DMG (MAAX), 2023 WL 5667535 *4 (C.D. Cal. July 14, 2023), *vacated and remanded* sub nom. *Corbett v. Transportation Sec. Admin.*, 116 F.4th 1024 (9th Cir. 2024) (also looking to D.C. Circuit precedent); *Tempey v. United States Dep't of Homeland Sec.*, No. 1:20-CV-5212 (ENV) (SJB), 2025 WL 576902 *3 (E.D.N.Y. Jan. 21, 2025), *appeal withdrawn*, No. 25-403, 2025 WL 1482935 (2d Cir. Mar. 10, 2025); *Kinnucan v. N.S.A.*, No. C20-1309 MJP, 2024 WL 4857444 *4 (W.D. Wash. Nov. 21, 2024); *see, e.g.*, *Gerstein v. C.I.A.*, No. C-06-4643 MMC, 2006 WL 3462658 *6 (N.D. Cal. Nov. 29, 2006).

1    that this factor weighs in their favor.  Additionally, as Plaintiffs note, various courts have

2    found that a plaintiff's having enforced a defendant's FOIA duties, as here, is inherently

3    of some public benefit.  *See L.A. Gay & Lesbian Cmty. Servs. Ctr. v. I.R.S.*, 559 F. Supp.

4    2d 1055, 1060 (C.D. Cal. 2008) (collecting cases); *Sierra Club*, 75 F. Supp. 3d at 1143.

5    The Ninth Circuit's decision in this case fits that mold.  Thus, the Court finds that this

6    factor weighs in Plaintiffs' favor.

7          **2. Plaintiffs' interest and commercial benefit**

8         Plaintiffs address the second and third entitlement factors together, arguing that

9    "Plaintiffs' request—and its subsequent podcast and articles—were . . . not a

10    part of any private, commercial interest" because "Plaintiffs represent a 501(c)(3)

11    nonprofit media organization dedicated to providing investigative reporting that benefits

12    the public" and were acting in furtherance of that mission.  Doc. No. 74 at 15–16.

13    Defendants do not argue these factors.  *See generally* Doc. No. 75.  Representing a

14    nonprofit entity, Plaintiffs sought information in a journalistic pursuit, hoping to inform

15    the public and decisionmakers.  Smith Decl. ¶¶ 3–7.  The Court thus tentatively finds that

16    factors 2 and 3 weigh in their favor.  *Sierra Club*, 75 F. Supp. 3d at 1144 (quoting *Church*

17    *of Scientology*, 700 F.2d at 494); *Long*, 932 F.2d 1309 at 1316.

18          **3**. **Reasonableness of Defendants' positions**

19         When analyzing Defendants' reasonableness, courts consider "whether the

20    agency's opposition to disclosure 'had a reasonable basis in law' . . . and whether the

21    agency 'had not been recalcitrant in its opposition to a valid claim or otherwise engaged

22    in obdurate behavior[.]'"  *Davy II*, 550 F.3d at 1162 (quoting *Tax Analysts v. U.S. Dep't*

23    *of Just.*, 965 F.2d 1092, 1096 (D.C. Cir. 1992) and *LaSalle Extension Univ. v. F. T. C.*,

24    627 F.2d 481, 486 (D.C. Cir. 1980)).  "'If the Government's position is founded on a

25    colorable basis in law, that will be weighed along with other relevant considerations in

26    the entitlement calculus.'"  *Id.* (quoting *Chesapeake Bay Found., Inc. v. U.S. Dep't of*

27    *Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993)).  "The agency bears the burden of showing

28    'that it had [a] colorable or reasonable basis for not disclosing the material' at issue."

1  *Edelman v. S.E.C.*, 356 F. Supp. 3d 97, 108 (D.D.C. 2019) ("*Edelman IV*") (citing *Davy*

2  *II*, 550 F.3d at 1162–63); *Sierra Club*, 75 F. Supp. 3d at 1145.

3         As to the initial silence from Defendants between Plaintiff Smith's FOIA request

4  and this action's filing, Defendants claims that they "performed a thorough set of

5  searches . . . on [its] Secure Internet Protocol Router (SIPR) Micro Focus Content

6  Manager (CM) in November 2019 both as a courtesy in Plaintiffs' substantially identical

7  request" in Westervelt Northern District Action and "in response to the present request

8  prior to this lawsuit." Doc. No 75 at 10 (citing Doc. No. 23-2 at 3–7 ("Guzman Decl.")

9  ¶ 4; Doc. No. 6 at 2). Even ignoring the difference between this action and the

10  Westervelt Northern District Action,[5] this rather vague statement in their opposition does

11  nothing to explain why it took nearly two years to "perform a search," nor why

12  Defendants failed to provide Mr. Smith the response required until litigation had begun.

13        Additionally, though Defendants cite general statistics about FOIA response times,

14  they do not go so far as to assert that this is why Mr. Smith's FOIA request, in specific,

15  received no response. Doc. No. 75 at 9, 17. Instead, they turn the burden back on

16  Plaintiffs. *Id.* at 17–18. The question here, however, "is not whether [Plaintiffs] ha[ve]

17  affirmatively shown that the agency was unreasonable, but rather whether the agency has

18  shown that it had any colorable or reasonable basis" for its positions. *See Davy II*, 550

19  F.3d at 1163; *Sierra Club*, 75 F. Supp. 3d at 1145; *Edelman IV*, 356 F. Supp. 3d at 108.

20  Defendants have not met this burden. Ultimately, "[f]ailing to explain the basis for

21  deferring its response . . . until after [Plaintiffs] filed suit is exactly the kind of behavior

22  the fee provision was enacted to combat." *See Davy II*, 550 F.3d at 1163. Thus, the

23  Court tentatively finds Defendants' withholding was unreasonable.

24

25

26  [5] The Court has addressed each DoD component's obligation to independently respond to FOIA
requests directed to them previously. *See* Doc. No. 12 at 6–7 (citing 5 U.S.C § 552(a)(3)(A); 32

27  C.F.R. § 286.7(a) ("The DoD Component receiving a FOIA request for a record that it maintains
is responsible for making a determination on the request and responding to the FOIA

28  requester.")).

1    As to Defendants' positions once litigation began, the Court tentatively finds that

2  they were reasonable.  Given the nature of this action and the Westervelt Northern

3  District Action, asserting the first-to-file rule applied in a motion to dismiss was a

4  colorable—even if ultimately incorrect—position.  *Cf. Edelman IV*, 356 F. Supp. 3d at

5  109 (agency's position was "not far-fetched" or "recalcitrant").  As to summary judgment

6  and the subsequent appeal, the Court finds no indication that Defendants arguments, even

7  those ultimately rejected by the Ninth Circuit, were unreasonable.  Indeed, even as to

8  those issues on which they were unsuccessful, Judge Ikuta issued a partial dissent

9  agreeing with Defendants' arguments.  *See* Doc. No. 54-1 at 8–10.  As to the specific

10  arguments Plaintiffs challenge concerning Defendants' asserted ability to search the

11  classified database, the dissent found "any search of NIPR for emails relating to the 2004

12  incident would have been futile" due to the timeframe of information available.  *Id.* at 8–

13  10 (citing Doc. No. 23-2 at 9–13 ("Guzman Supp. Decl.") ¶ 11).  This interpretation

14  supports—to some extent—counsel's assertions, and in doing so demonstrates that

15  reasonable minds could differ on the matter.  Thus, while unsuccessful, Defendants were

16  not unreasonable.

17    Having analyzed the parties' arguments, the Court tentatively finds that

18  Defendants' failure to respond as obligated to Plaintiffs' FOIA request, from the FOIA

19  request's filing to the instant action's initiation, was unreasonable and thus weighs in

20  favor of Plaintiffs' request for attorneys' fees.  Defendants' conduct after Plaintiffs filed

21  their initial complaint was reasonable even if, at times, unsuccessful.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1    **4. Plaintiffs' Conduct in Litigation**[6]

2    Defendants ask that the Court weigh Plaintiffs' conduct during litigation against

3    them, arguing that "counsel engaged in unfortunate tactics that significantly increased

4    litigation and failed to reflect a spirit of collaboration and candor."  Doc. No. 75 at 20.

5    Specifically, Defendants argue that "Plaintiffs refused to acknowledge receipt of

6    CENTCOM's JAGMAN record" in the Westervelt Northern District Action at the motion

7    to dismiss stage, as they should have; counsel refused "to share records to facilitate

8    CENTCOM's search"; counsel wrongfully claimed "[i]gnorance about MARCENT's

9    FOIA process," despite allegedly submitting FOIA requests to MARCENT previously.

10   *Id.* at 20–22.

11   As to the receipt of the JAGMAN report, the Court fully considered that matter at

12   the motion to dismiss stage, and it is not clear how Defendants believe Plaintiffs'

13   acknowledging the JAGMAN report's release in the Westervelt Northern District Action

14   would have affected the issues at play.  *See* Doc. No. 12 at 4.  As to the alleged refusal to

15   share records, Plaintiffs argue in response that they "declined for an obvious reason:

16   CENTCOM may—and did—produce different documents with different redactions since

17   they did not know what Plaintiffs already had.  This was simply good vetting of sources

18   and proper journalism."[7]  Doc. No. 76 at 7.  The original emails between counsel were

19   filed as exhibits at summary judgment.  Doc. No. 33-3.  While the Court "expect[s]

20   lawyers to not arbitrarily or unreasonably withhold consent to a reasonable request for

21

22

---

23   [6] Concerning both parties' multiple accusations against the other's conduct, this Court "expect[s]
24   lawyers to treat adverse witnesses, litigants and opposing counsel with courtesy, fairness and respect."
     CivLR 2.1.a.3.b.  "As such, the Court expects that all who practice [before it] will adhere to [its] Code
25   of Conduct . . . to nurture, rather than tarnish, the practice of law . . . ." *Id.* at 2.1.a.1.  This includes
     expectations that "lawyers to refrain from attributing to an opponent a position the opponent has not
26   clearly taken" and "conduct themselves so that they may conclude each case amicably with the opposing
     party." *Id.* at 2.1.a.3.e, 2.1.a.3.m.  Thus, parties should be exceptionally careful when making
27   accusations that one another has behaved in an unbecoming manner.
     [7] It is unclear to what "different documents" Plaintiffs refer, as this event apparently occurred after the
28   JAGMAN report was produced.  *See* Doc. No. 75 at 21; Doc. No. 74 at 8; Doc. No. 40 at 3.

1   cooperation or accommodation," CivLR 2.a.3.d, the Court tentatively finds that the

2   record does not support that Plaintiffs acted unreasonably.

3       As to Plaintiffs' counsel's statement at oral arguments concerning a separate FOIA

4   unit for related DoD component MARCENT, the oral arguments do not support

5   Defendants' framing.  Asked whether he had contrary information to Defendants'

6   representation that "there was a separate FOIA unit for MARCENT," Plaintiffs' counsel

7   stated that he did not.  Oral Argument at 30:00 –31:30, *NPR* v. *CENTCOM*, 23-55062

8   (9th Cir. Feb 13, 2024).[8]  The Court, on this record, cannot conclude that counsel was

9   dishonest.

10      **5. Plaintiff's success in the Northern District**

11      Because Plaintiffs also obtained the JAGMAN report from the Westervelt

12   Northern District Action, Defendants argue that the Court should "cut off fees incurred"

13   after it was produced there.  Doc. No. 75 at 23–24.  Plaintiffs disagree.  Doc. No. 76 at

14   10.  Because Defendants' arguments are, in effect, that Plaintiffs should be precluded

15   from recovering fees here, the Court will address this argument in addressing whether

16   Plaintiffs are entitled to fees rather than the reasonableness of the fees requested.   The

17   Court tentatively agrees with Plaintiffs.  Simply put, even were the requestors identical,

18   the underlying FOIA requests in the two matters were different, and  agencies have a

19   responsibility to respond to each FOIA request.  *See* 5 U.S.C § 552(a)(3)(A); 32 C.F.R. §

20   286.7(a).  To find otherwise would require FOIA requesters to, as Plaintiffs argue,

21   "internalize prospective indeterminacy" wherein they lose the ability to seek attorneys'

22   fees—despite being otherwise entitled to them—merely because the documents produced

23   overlap with those produced in response to a separate, previous request.  *See PPT*, 2024

24   WL 663427 at *7–8; *Morley*, 810 F.3d at 844.

25

26

27

28
    ───────────────────
    [8] https://www.youtube.com/watch?v=AlAdTCyBSBk&t=1824s.

1    Considering the factors discussed above, the Court tentatively determines that

2    Plaintiffs are entitled to attorneys' fees in this matter.  Accordingly, the final

3    determination is whether Plaintiffs' proposed amount is reasonable.

4    **C. Amount**

5    Plaintiffs seek a total award of $444,776.25 in costs and fees in connection to this

6    action ($438,209.50 in attorneys' fees and $6,566.75 in costs), arguing that the amount is

7    reasonable in both hours and rates.  Doc. No. 74 at 17–20.  Plaintiffs submit declarations

8    and spreadsheets in support of their fees, hours, and rates.  Doc. No. 74-2–74-4.  They

9    additionally seek "reply-related fees . . . [of] an additional $7,855.00."  Doc. No. 76 at 11.

10   Defendants argue in opposition that Plaintiffs' requested fees are "grossly" out of line

11   with the nationwide median fee payment and that their "request reflects inflated hourly

12   rates, inefficient double/triple staffing[,] and prohibited costs."  Doc. No. 75 at 24–26.

13   Defendants suggest the Court therefore impose a 90% block reduction on the amounts

14   Plaintiffs seek.  *Id.* at 26.

15   As discussed above, "once the court has determined that the plaintiff is both

16   eligible for and entitled to recover fees, the award must be given and the only room for

17   discretion concerns the reasonableness of the amount requested."  *Long*, 932 F.2d at

18   1314.  A "plaintiff who has proven both eligibility for and entitlement to fees must

19   submit his fee bill to the court for its scrutiny of the reasonableness of (a) the number of

20   hours expended and (b) the hourly fee claimed."  *Id.* at 1313–14.  "If these two figures

21   are reasonable, then there is a "strong presumption' that their product, the lodestar figure,

22   represents a reasonable award."  *Id.* at 1314.  While the Court must not use this analysis

23   to rehash the entitlement factors, it may consider a case's difficulty and Plaintiffs' degree

24   of success on their arguments in determining reasonability.  *See Long*, 932 F.2d at 1314–

25   15; *Yonemoto v. Dep't of V.A.*, 549 F. App'x 627, 630 (9th Cir. 2013); *see also PETA*,

26   130 F. Supp. 3d at 163 ("The degree of plaintiff's success is the 'most critical factor' in

27   determining the reasonableness of a fee award.").

28

The Court issues its tentative findings as to rates below.  Because the case is ongoing, and due to the volume of Plaintiffs' billing statements, the Court **TENTATIVELY DEFERS** its final decision as to the hours, costs, and the final amount appropriate in this matter, and instead **TENTATIVELY DIRECTS** the parties to attend a settlement conference with Magistrate Judge Goddard as to the amount, as further discussed at this order's conclusion.  To the extent there are broader legal findings pertinent to resolution, however, the Court addresses them.

i. Hours

"For the purposes of calculating the 'lodestar' figure, the Court has discretion in determining the number of hours reasonably expended on a case." *Sierra Club*, 75 F. Supp. 3d at 1148.  "Reasonably expended time is generally time that 'could reasonably have been billed to a private client.'" *Rosenfeld v. U.S. Dep't of Just.*, 903 F. Supp. 2d 853, 872 (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008)). Having considered Plaintiffs' declarations (*see, e.g.*, Doc. No. 74-2 ("Aviles Decl.")), the record, and the nature of the case and Plaintiffs' degree of success,[9] the Court tentatively identifies some categories within Plaintiffs' billing entries that may be excessive or require further explanation:

1. Time billed towards internal meetings or communications between Plaintiffs' counsel, especially where multiple attorneys recorded time.

---

[9] The Court tentatively declines, at least here, to wholly equate the quantity of information/documents secured as a measure of success in FOIA cases, though it does consider the quantity disclosed in rendering this decision.  As discussed, FOIA disfavors placing the burden of foreknowledge on plaintiffs for records within agency possession. *See PPT*, 2024 WL 663427 at *7–8; *Morley*, 810 F.3d at 844; *but see Braintree Elec. Light Dep't*, 494 F. Supp. at 291.  Conversely, such an approach risks reducing FOIA attorneys' fees to a lottery, where counsel who demonstrate little effort or skill may nonetheless strike rich by the mere luck that their defendants maintain voluminous records, while skilled and effortful lawyering may lead to less because defendants did not.  Finally, equating quantity to success requires the Court to assume that there is little value in a requestor's revelation that there are no or few responsive documents as to a particular subject.  Revelation of the government's lack of records may, at times, be as illuminating and as beneficial to the public as records themselves.  This creates a subtle difference between FOIA actions and traditional actions in which the quantity of damages awarded scales more directly to the degree of harm suffered or degree of malfeasance committed.

2.   Time spent by non-partner attorneys reviewing other non-partner attorneys' work, resulting in duplicative entries.

3.   Time spent mooting summary judgment and appellate oral argument.

4.   Mr. Row's significant hours billed towards drafting, editing, and researching Plaintiffs' appellate briefing, especially considering the large volume of hours and hours spent by other attorneys on related tasks.

5.   Travel time and appearance times for hearings attended by multiple attorneys.

*See* Doc. No. 79. This list is nonexhaustive but identifies those categories that appear most likely duplicative, excessive, and unreasonable.

ii. Rates

"In assessing a reasonable hourly rate for the lodestar figure, courts should consider the prevailing market rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Sierra Club*, 75 F. Supp. 3d at 1152.  Declarations, relevant cases, and other such documents presented by the attorneys seeking fees are adequate evidence of the prevailing rate, and the nonmovant may submit rebuttal evidence to support a lower rate. *Id.*  As a general matter, Plaintiffs' calculations are based on data from "annual survey[s] . . . compiled independently by one of the 'Big Four' national accounting firms" concerning other law firms in the Southern California and Los Angeles area, id. at ¶ 2, and thus is not restricted to comparative rates in the Southern District, the relevant community.  *See Soler v. Cnty. of San Diego*, No. 14CV2470-MMA (RBB), 2021 WL 2515236 *4 (S.D. Cal. June 18, 2021) ("As this Court has noted . . . the San Diego community charge[s] different rates than '. . . our neighbor to the North.'").

Having reviewed the parties' submissions, declarations and case law; and considering the practice area, success on the merits, timeframe, and all other relevant factors, the Court **TENTATIVELY FINDS** the following rates appropriate:

| Staff/Role | 2021 Rate (/hr.) | 2022 Rate (/hr.) | 2023 Rate (/hr.) | 2024 Rate (/hr.) | 2025 Rate (/hr.) |
|---|---|---|---|---|---|
| Thomas Burke/Partner | $700 | $725 | $750 | $775 | $800 |
| Caesar Kalinowski/Associate | $400 | $425 | $450 | $475 | $500 |
| Alec Zatirka/Associate | | | | | $375 |
| Andrew Row/Associate | | | $430 | | |
| Jean Fundakowski/Associate | | $400 | $425 | $450 | |
| Noel Nurrenbern/Paralegal | $200 | | $225 | | $250 |

These rates reflect those in reasonably comparable cases. *See Fitzgerald v. Pollard*, No. 20CV848 JM(MSB), 2024 WL 4596401 *11 (S.D. Cal. Oct. 28, 2024); *Kries v. City of San Diego*, No. 17-CV-1464-GPC-BGS, 2021 WL 120830 *4–8 (S.D. Cal. Jan. 13, 2021) (FLSA); *Soler*, 2021 WL 2515236 at *5; *Durruthy v. Charter Commc'ns, LLC*, No. 3:20-CV-01374-W-MSB, 2021 WL 6883423 *6 (S.D. Cal. Sept. 30, 2021).

iii. Reply Fees

Plaintiffs seek $7,855 in attorneys' fees for Messrs. Kalinowski and Burke's work on their reply here. Doc. No. 76-1 at 4. "[F]ees for work on a motion for attorney's fees [] are typically recoverable, including for a reply brief." *Kries*, 2021 WL 120830 at *14. However, counsel includes hours spent working on the fees motion in their initial submission, as well as hours ostensibly spent negotiating fees with Defendants. *See* Doc. No 79 at 12–13; Doc. No. 70 at 2. The parties have been "discussing the possibility of settlement over Plaintiffs' attorneys' fees" since at least late March 2025. Doc. No. 66 at 2. While Plaintiffs are entitled to seek fees for work the instant motion, allowing them to bill substantial hours to their attorneys' fees motion risks it consuming the rest of the litigation, and thus the Court identifies Plaintiffs' request for fees as to its replies, or any work of the matter of attorneys' fees thereafter, as potentially unreasonable in light of the circumstances.

iv. <u>Costs</u>

In addition to their attorneys' fees, Plaintiffs seek recuperation of costs in the amount of $6,566.75.  Doc. No. 74-4 at 24.  Defendants argue that many of these costs are not recoverable under 28 U.S.C. § 1920 and should be rejected.  Doc. No. 75 at 26. FOIA allows parties entitled to attorneys' fees to also recover "costs reasonably incurred" in prosecuting an action.  5 U.S.C. § 552(a)(4)(E)(i).  Generally, "[t]he types of costs that may be awarded against the United States, absent specific statutory authorization enlarging the scope of an award, are enumerated in 28 U.S.C. § 1920 . . . ."  *Kuzma v. I.R.S.*, 821 F.2d 930, 932 (2d Cir. 1987).  However, some circuits, including the D.C. Circuit, do not limit costs to those under § 1920 and instead read FOIA to require including the "reasonable costs necessarily incurred" even if not enumerated in § 1920. *Id.* at 932–33;  *See Blazy v. Tenet*, 194 F.3d 90, 95 (D.C. Cir. 1999), *cf. Bensman v. United States Fish & Wildlife Serv.*, 49 F. App'x 646, 647 (7th Cir. 2002).  The Court has not found any circuit that rejects *Kuzma*'s approach.  *But cf. Anderson v. Sec'y of H.H.S.*, 80 F.3d 1500, 1508 (10th Cir. 1996) ("We do not decide whether to adopt [*Kuzma*'s] holding").  Some courts in the Ninth Circuit have followed this approach, while others have strictly adhered to § 1920.  *Compare Assembly of State of Cal. v. U.S. Dep't of Com.*, No. CIV. S-91-990WBS/JFM, 1993 WL 188328 *16 (E.D. Cal. May 28, 1993) (citing *Kuzma*) with *Cianci v. United States Dep't of H.H.S.*, 766 F. Supp. 3d 942, 945 (D. Ariz. 2025) ("District courts generally do not have the discretion to expand the definition of costs beyond the items expressly listed in § 1920.")  Because the Court finds no Ninth Circuit precedent addressing the issue as to FOIA, and given the appellate courts' positions, it will follow *Kuzma*'s approach.

Upon reviewing Plaintiffs' costs, Doc. No. 74-4 at 24, the Court tentatively identifies the following as potentially excessive or requiring further explanation :

1. June 30, 2023—Plaintiffs' $1,223.02 for printing, binding, and delivery to the Ninth Circuit.

1

### III. TENTATIVE CONCLUSION

2     For the reasons above, the Court **TENTATIVELY GRANTS IN PART**

3   Plaintiffs' motion for attorneys' fees based on findings that they are both eligible and

4   entitled to attorneys' fees.  It **TENTATIVELY DEFERS** ruling on the final costs and

5   fees awarded, however, pending the parties' participation in a settlement conference.

6   Accordingly, it **TENTATIVELY DIRECTS** the parties to attend a settlement

7   conference with Magistrate Judge Goddard on **September 26, 2025 at 12:30 P.M.**  A

8   separate order shall issue concerning any pre-conference requirements.  Should the

9   parties fail to settle, the Court **TENTATIVELY DIRECTS** them to file a joint motion

10  requesting it resolve the amount to be awarded based on the parties' existing briefing.

11     **IT IS SO ORDERED**.

12  Dated:  September 8, 2025

13

14           HON. MICHAEL M. ANELLO
             United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28